**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

ROBERT SCHULTZ, Trustee for the Next of Kin of Rosemary Schultz, Decedent,

Plaintiff,

v.

GGNSC ST. PAUL LAKE RIDGE LLC, JOHN DOES, and JANE DOE,

Defendants.

Civil No. 17-2754 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Richard E. Student, **MESHBESHER & ASSOCIATES, P.A.**, 225 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, MN 55402, for plaintiff.

Alana K. Bassin and Rachelle A. Velgersdyk, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402, for defendants.

GGNSC St. Paul Lake Ridge LLC ("Lake Ridge"), brought this Motion to Compel Arbitration and Stay Proceedings in a wrongful death action brought by Robert Schultz ("Plaintiff"), trustee for the next of kin of Rosemary Schultz, decedent. Lake Ridge alleges that Plaintiff's wrongful death action is subject to arbitration pursuant to a mutual, binding Arbitration Agreement signed by the decedent's power of attorney when the decedent was admitted to Lake Ridge's nursing home facility. Because the Court will find that Plaintiff's claim is derivative and therefore bound by the Arbitration Agreement, the Court will grant Lake Ridge's Motion to Compel Arbitration and Stay Proceedings.

## BACKGROUND

### I. FACTUAL BACKGROUND

On July 19, 2007, Jeanne Kassim admitted her mother, Rosemary Schultz, to Lake Ridge, a skilled nursing facility in Roseville, Minnesota. (Def.'s Mem. in Supp. of its Mot. to Compel Arb. at 1-2, July 14, 2017, Docket No. 6.) When she admitted her mother, Kassim held a limited power of attorney and signed two documents on behalf of her mother: (1) the Admission Agreement and (2) the Resident and Facility Arbitration Agreement ("the Arbitration Agreement"). (*Id*. at 2.)

#### A. The Arbitration Agreement

The Arbitration Agreement is titled "**RESIDENT AND FACILITY ARBITRATION AGREEMENT (NOT A CONDITION OF ADMISSION - READ CAREFULLY)**." (Aff. of Jennifer L. Bullard ¶ 3, Ex. B ("Arbitration Agreement"), July 14, 2017, Docket No. 7 (emphasis in original).) It reads in part:

> The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction involving interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement\1, and not by a lawsuit or resort to court process. This agreement shall be governed by

> and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

(*Id*.) The Arbitration Agreement purports to cover claims of "negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on . . . negligence." (*Id*.) It purports to bind not only the parties but also "their successors, and assigns, . . . and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator, or heir of the Resident." (*Id.*) It also purports to "survive the lives or existence of the parties hereto." (*Id*.)

The Arbitration Agreement specifically states that the parties "**ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES."** (*Id.* (emphasis in original)). Finally, the Arbitration Agreement states again that it "is not a precondition to the admission or to the furnishing of services to the Resident by the Facility." (*Id.*)

**B. Schultz's Death**

Schultz remained at Lake Ridge until August 22, 2016, when she was taken to the hospital. (Def.'s Notice of Removal ¶ 1, Ex. 1 ("Compl.") ¶ 18, July 11, 2017, Docket No. 1.) Schultz died in the hospital on September 1, 2016. (Compl. ¶ 21.) Plaintiff

alleges that Schultz's death, due to complications resulting from an extremity fracture, was the result of negligence by Lake Ridge and its staff. (*Id.* ¶¶ 16-33.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Lake Ridge for the wrongful death of Rosemary Schultz in state court on June 20, 2017. (*Id.*) Lake Ridge removed the case on July 11, 2017, alleging diversity jurisdiction. (Def.'s Notice of Removal.) On July 14, 2017, Lake Ridge filed this Motion to Compel Arbitration and Stay Proceedings. (Def.'s Mot. to Compel Arb., July 14, 2017, Docket No. 4.)

# DISCUSSION

## I. STANDARD OF REVIEW

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration and staying the proceedings. 9 U.S.C. § 3. On a motion to compel arbitration and stay proceedings under the Federal Arbitration Act ("FAA"), the Court does not determine the merits of the substantive issues, but simply whether the parties have agreed to submit a particular grievance to arbitration. *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008). When considering such a motion, the Court is therefore limited to determining: (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute is within the scope of that agreement. *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

In conducting this inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

An arbitration agreement should be construed liberally, with any doubts resolved in favor of arbitration. *See MedCam, Inc. v. MCNC*, 414 F.3d 972, 976 (8th Cir. 2005). As the party seeking to avoid arbitration, Plaintiff bears the burden of proving that the claims at issue are not suitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).[1]

## II. VALIDITY OF THE AGREEMENT

Plaintiff does not dispute that Jeanne Kassim signed the Arbitration Agreement or that she had legal authority to sign on Ms. Schultz's behalf. However, Plaintiff alleges in his initial Complaint that the Arbitration Agreement "is void and unenforceable on the grounds of impossibility, illegality, contravention of public policy, fraud in the inducement based on material misrepresentation and omission, and unconscionability

[1] The standard of review is the same under the Minnesota Uniform Arbitration Act ("MUAA"). *See Amdahl v. Green Giant Co.*, 497 N.W.2d 319, 322 (Minn. Ct. App. 1993) (review of a motion to compel arbitration under the MUAA is limited to (1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the scope of the arbitration); *see also Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995) (doubts concerning the scope of arbitrable disputes are resolved in favor of arbitration); *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 349 (Minn. 2003) (the party opposing the arbitration bears the burden of proving that the dispute is outside the scope of the agreement).

based on material misrepresentation and omission." (Compl. ¶ 13.) These generally applicable contract defenses may be applied to invalidate arbitration agreements, *see Doctor's Assocs., Inc.*, 517 U.S. at 687, but at the motion hearing Plaintiff indicated that he wished to reserve these defenses for arbitration rather than advance them in response to this motion. Because the Court finds that these issues are appropriate for arbitration, the Court will not address them at this time. Thus, the Court concludes that the Arbitration Agreement is a valid agreement to arbitrate.

## III. SCOPE OF THE AGREEMENT

The Court also finds that this wrongful death action falls within the purported scope of the Arbitration Agreement. When interpreting arbitration agreements, courts should construe them liberally and resolve any doubts in favor of arbitration. *MedCam, Inc.*, 414 F.3d at 976. In this case, the plain language of the Arbitration Agreement sets forth a scope that includes Plaintiff's wrongful death action. The alleged harm suffered by Ms. Schultz "ar[ose] out of . . . service or health care provided by the Facility to the Resident," and the Arbitration Agreement "bind[s] the parties, their successors, and assigns, including without limitation . . . all persons whose claim is derived through or on behalf of the Resident." (Arbitration Agreement.)

Nevertheless, the parties dispute whether the Arbitration Agreement's purported scope is legally permissible. Plaintiff argues that, as a matter of contract law, Ms. Schultz's heirs cannot be bound by an arbitration agreement they were not party to. Lake

Ridge argues that Plaintiff is bound by the Arbitration Agreement because his wrongful death action is a derivative action in which he must step into Ms. Schultz's shoes.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Under the FAA, a determination of who is bound by an agreement to arbitrate is a question of federal law. *Flink v. Carlson*, 856 F.2d 44, 46 n.2 (8th Cir. 1988). However, federal courts should look to state law for guidance because the question involves the application of contract principles. *Id.* Thus the Court looks to Minnesota state law to determine whether a decedent can prospectively bind her heirs to arbitration of a wrongful death action.

The Court is bound by the decisions of Minnesota's highest court, but because the Supreme Court has not decided this question, the Court must "apply the rule of decision that [it] believe[s] the state's highest court would apply." *Cassello v. Allegiant Bank*, 288 F.3d 339, 340 (8th Cir. 2002). In making this determination, the Court may "look to the opinions of intermediate appellate courts of [Minnesota] for guidance." *Id.*

### A. Minnesota's Wrongful Death Statute

Minnesota law allows a trustee to bring a wrongful death action "[w]hen death is caused by the wrongful act or omission of any person or corporation . . . if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." Minn. Stat. § 573.02, subd.1. Recovery "is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and

shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death." *Id.*

**B. Minnesota State Law**

Though the Minnesota Supreme Court has not decided the question before this Court, it has articulated that wrongful death actions are derivative of the injury suffered by the decedent. *See Hannah v. Chmielewski, Inc.*, 323 N.W.2d 781, 782 (Minn. 1982). In *Chmielewski*, the court found that a trustee's wrongful death action "is clearly dependent upon the decedent's right to maintain the action" because Minnesota's statute allows for a wrongful death action only "if the decedent might have maintained an action, had he lived." *Id.* The court distinguished Minnesota's Dram Shop Act, which gave an independent right of recovery to the wife of the injured party. *Id.*

In *Bakke v. Rainbow Club, Inc.*, the Minnesota Supreme Court held that a jury finding that decedent had assumed the risk of his own injury and death by furnishing intoxicating liquor to the driver was a defense to the trustee's wrongful death claim. 235 N.W.2d 375, 378 (Minn. 1975). The holding in *Bakke* suggests that a wrongful death claim is subject to the same defenses as the decedent's underlying personal injury action.

The Minnesota Court of Appeals has followed this interpretation in insurance cases to find that wrongful death actions cannot proceed when the decedent would not have had a claim under the policy in question. In *Grise v. State Farm & Casualty Co.*, the Minnesota Court of Appeals granted an insurer's summary judgment motion on a mother's claim for the wrongful death of her daughter because the policy excluded

recovery for bodily injury to an insured person, and the daughter was insured. No. C3-95-448, 1995 WL 479665, at *1 (Minn. Ct. App. Aug. 15, 1995) (unpublished). The mother was not insured and argued that she was asserting an independent claim as her daughter's survivor. *Id.* The court found that a wrongful death claim "arises out of and is derived from the bodily injury to the decedent," thus the mother could not recover. *Id.*

In *Minnesota Mutual Fire & Casualty Insurance Co. v. Lundman*, the Minnesota Court of Appeals found that a claim brought by a father for the wrongful death of his son was derivative, even though it provided recovery for loss of services, because all recovery was predicated on the son's death. No. C1-92-1101, 1992 WL 340540, at *2 (Minn. Ct. App. Nov. 24, 1992) (unpublished).

Plaintiff points to the Minnesota Supreme Court's language in *Johnson v. Consolidated Freightways, Inc.*, to support his view that he cannot be bound by the Arbitration Agreement because wrongful death claims belong to the surviving beneficiaries, not Ms. Schultz. 420 N.W.2d 608 (Minn. 1988). In *Consolidated Freightways, Inc.*, the court said that the right to a wrongful death action belongs "exclusively to the surviving beneficiaries, with compensation for their pecuniary loss being the 'sole purpose'" of the action. *Id.* at 611 (quoting *Schwarz v. Judd*, 10 N.W. 208, 209 (Minn. 1881)). However, *Consolidated Freightways, Inc.* did not deal with the question of whether a wrongful death beneficiary is bound by a decedent's prior contracts, and it did not hold that a wrongful death claim is not derivative. Indeed the court still noted that the right of action "obviously stems from decedent's death." *Id.* at 613. Under federal and Minnesota law, there is a presumption in favor of arbitration, *see*

*Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995), and the language of *Consolidated Freightways, Inc*. is insufficient to overcome this presumption.

Reading *Consolidated Freightways, Inc*. in conjunction with *Chmielewski* and *Bakke*, and in light of the Courts of Appeals' subsequent decisions, the Court concludes that Plaintiff's wrongful death claim is derivative. As such, Plaintiff stands in Ms. Schultz's shoes and is subject to any defenses or contracts that would apply to Ms. Schultz's claim had she lived. Because Ms. Schultz would have to arbitrate the underlying personal injury claim, Minnesota law dictates that Plaintiff must also arbitrate his wrongful death claim.

**C. Persuasive Authority**

There are cases from other jurisdictions supporting both parties' views. *See Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 886 N.W.2d 601, 608-10 (Iowa 2016) (collecting cases). In many persuasive cases, wrongful death claims brought by personal representatives who stand in the shoes of the decedent are bound to arbitration agreements signed by the decedent. *See id*. While these cases are not binding, their decisions can be instructive, especially when the state statutes under scrutiny are comparable to the Minnesota statute at issue here.

Texas's wrongful death statute has language comparable to Minnesota's, allowing beneficiaries to bring an action "only if the individual injured would have been entitled to bring an action for the injury if the individual had lived." Tex. Civ. Prac. & Rem. Code Ann. § 71.003(a). The Texas Supreme Court found that a wrongful death action is

"entirely derivative," thus placing the beneficiaries in the decedent's "exact 'legal shoes'" and subjecting them "to the same defenses to which the decedent's claims would have been subject." *In re Labbatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (quoting *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992)). The court also held that beneficiaries were subject to the decedent's pre-death contractual releases and limitations, including arbitration. *Id.* at 645-66. The court found that a wrongful death action is derivative, *id.*, even though the Texas statute says that the action is "for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

The Supreme Court of Florida also found that an arbitration agreement signed by the decedent prior to death was enforceable against survivors. *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 759 (Fla. 2013). *Laizure* is instructive for several reasons. First, Florida's statute's language is similar to Minnesota's, allowing a wrongful death claim to be brought if the underlying injury "would have entitled the person injured to maintain an action and recover damages if death had not ensued." Fla. Stat. Ann. § 768.19. Second, *Laizure* held that survivors were bound by the agreement even though Florida's statute had long been interpreted to provide them with "a new and distinct right of action from the right of action the decedent had prior to death." *Laizure*, 109 So. 3d at 759-60 (quoting *Toombs v. Alamo Rent-A-Car, Inc.*, 833 So.2d 109, 111 (Fla. 2002)). Third, *Laizure* held as such even though the measure of damages in wrongful death claims was different from the measure of damages in personal injury claims and included recovery for loss of companionship. *Id*. at 761-62; Fla. Stat. Ann. § 768.21(2)-(3).

Other courts in states with similar statutes have found that wrongful death claims are bound by arbitration agreements signed by the decedent.[2] In some cases, courts have found that beneficiaries are bound by agreements to arbitrate even when the statute entitles beneficiaries to damages such as loss of companionship, *see* Mich. Comp. Laws Ann. § 600.2922(6), and even when the statute states that damages are determined by a jury, *see, e.g.*, Ala. Code § 6-4-410; Tex. Civ. Prac. & Rem. Code Ann. § 71.010(a)-(b).

But not all state courts have found that wrongful death claims are bound by arbitration agreements signed by the decedent. Some of the conflicting cases are distinguishable because the state's statutes or statutory schemes are different from Minnesota's.[3] Others have similar statutes but reach different results.[4]

---

[2] *See, e.g.*, *Diversicare Leasing Corp. v. Hubbard*, 189 So. 3d 24, 28 (Ala. 2015) (arbitration agreement that binds decedent also binds decedent's representative); *Ruiz v. Podolsky*, 237 P.3d 584, 593 (Cal. 2010) ("Although a wrongful death claim is an independent action, wrongful death plaintiffs may be bound by agreements entered into by decedent that limit the scope of the wrongful death action."); *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 422 (Ind. Ct. App. 2004); *Ballard v. Sw. Detroit Hosp.*, 327 N.W.2d 370, 371-72 (Mich. Ct. App. 1982).

[3] *See, e.g.*, *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 231 P.3d 1252, 1261 (Wash. Ct. App. 2010). The Court of Appeals of Washington found that wrongful death claimants were not required to arbitrate their claims because "Washington's wrongful death statutes do not expressly condition a beneficiary's wrongful death claims on the decedent's right to maintain a suit for injuries." *Id.* The court distinguished Washington's statute from Texas's statute in *In re Labatt* and Michigan's statute in *Ballard*, finding that wrongful death claims in Washington were not derivative in the same way. *Id.* at 1260-61.

[4] *See, e.g.*, *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 528 (Mo. 2009). Notably, Missouri's statute's language is similar to Minnesota's. However, Missouri maintains a survival statute alongside wrongful death claims, while Minnesota does not. *See* Minn. Stat. § 573.01. Thus, a Minnesota wrongful death action is more "derivative" than a Missouri wrongful death action because a Minnesota trustee cannot bring a separate survival action.

Nevertheless, the Court concludes that the Minnesota Supreme Court would find that Plaintiff is bound to arbitrate. Minnesota state court precedent demonstrates that wrongful death claims are derivative in nature. Beneficiaries are therefore bound by decedent's defenses, and by analogy should be bound by decedent's contractual limitations, including arbitration agreements. Furthermore, federal and state public policy favors arbitration. *See Piper Jaffray, Inc.*, 530 N.W.2d at 795. In light of Minnesota law and public policy, the Court finds that Plaintiff is bound to arbitrate his wrongful death claim and will grant Lake Ridge's Motion to Compel Arbitration and Stay Proceedings.

## IV. RIGHT TO JURY TRIAL

Plaintiff argues that the beneficiaries have a statutory right to a jury trial because Minnesota's wrongful death statute states that recovery "is the amount the jury deems fair and just." Minn. Stat. § 573.02, subd.1. Plaintiff's argument fails for two reasons. First, even if the statute established a right to a jury trial, such a right can be waived. If the claim is derivative and thus bound by the defenses and contracts that the decedent was bound by, the right to a jury was waived when the decedent signed the arbitration clause. Second, the statute cannot be read to guarantee a jury trial because to do so would prohibit the arbitration of wrongful death claims, which would conflict with the FAA. The FAA, as federal law, is supreme. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-44 (2011). Thus, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the

FAA." *Id.* at 341. Because the FAA is supreme and because Plaintiff's claim is derivative of Ms. Schultz's claim for which she waived her right to a jury trial, Minnesota's wrongful death statute does not entitle Plaintiff to a jury trial in this action.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Lake Ridge's Motion to Compel and Stay Proceedings [Docket No. 4] is **GRANTED**.

DATED: February 27, 2018
at Minneapolis, Minnesota.

s/John R. Tunheim
JOHN R. TUNHEIM
Chief Judge
United States District Court